Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles H. Linehan (SBN 307439)
  clinehan@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Patricia Quille*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA QUILLE, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| INTEL CORPORATION, PAT GELSINGER, and DAVID ZINSNER, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Patricia Quille ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Intel Corporation ("Intel" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Intel; and (c) review of other publicly available information concerning Intel.

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons and entities that purchased or otherwise acquired Intel securities between January 25, 2024 and April 25, 2024, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Intel designs, develops, manufactures, markets, and sells computing and related products and services worldwide. The Company's product portfolio is comprised of central processing units (CPUs), chipsets, processors, graphics processing units (GPUs), and other semiconductor products. It also offers silicon devices and software products; and optimization solutions for workloads, such as AI, cryptography, security, storage, and networking.

3.    On March 23, 2021, Chief Executive Officer Pat Gelsinger ("Gelsinger") laid out his vision for the future of the Company under a program he dubbed "IDM 2.0."[1] To deliver on this vision, the Company announced it would reconfigure and would now be operating through the following reportable segments: Client Computing Group, Data Center and AI, Network and Edge, Mobileye, and Intel Foundry Services ("IFS"). IFS was created to encompass the Company's packaging and process technology. Beginning in the first quarter of Fiscal Year 2022, The Company utilized these segments to report revenue. Then, on October 11, 2022, Gelsinger announced the Company would shift to an "internal foundry model" (the "Internal Foundry" or "Foundry" model).

---

[1] Integrated Device Manufacturing ("IDM").

Under the Internal Foundry model, Intel would recognize revenues generated from both external foundry customers and Intel Products, as well as technology development and product manufacturing costs historically allocated to Intel Products. On June 21, 2023, the Company provided an update on the Foundry model, explaining that, beginning in the first quarter of 2024, the Company would separate out all manufacturing services into a separate group, inclusive of IFS, manufacturing, and technology development, to form the Foundry, and implement a new financial reporting structure to recognize this reorganization, under which Foundry would be responsible for its own reportable profit and losses ("P&Ls"). The Company emphasized the cost saving and margin improving benefits the Internal Foundry model would provide and the tailwind it would bring to IFS.

4.      On April 2, 2024, after the markets closed, Intel issued a press release which disclosed a retrospective revision of the Company's financial results under the new Foundry model reporting structure, revealing that the Foundry segment experienced an operating loss of $7 billion on sales of $18.9 billion in 2023, that Foundry revenue in 2023 was $18.9 billion down $8.6 billion from 2022, that that the segment's operating loss included a $2.1 million in lower product profit driven by lower internal revenue.

5.      On this news, Intel's stock price fell $3.61, or 8.2%, to close at $40.33 per share on April 3, 2024, on unusually heavy trading.

6.       On April 25, 2024, after the markets closed, Intel released its first quarter 2024 financial results, the first quarter reporting the Company's results under the Foundry model; the results revealed the Company's Foundry segment declined 10% compared to the same quarter last year, to a revenue of $4.4 billion.

7.      On this news, Intel's stock price fell $3.23, or 9.2%, to close at $31.88 per share on April 26, 2024, on unusually heavy trading.

8.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the growth of Intel Foundry Services was not indicative of revenue growth reportable under the Internal Foundry

segment; (2) the Foundry experienced significant operating losses in 2023; (3) that the Foundry experienced a decline in product profit driven by lower internal revenue; (4) as a result the Foundry model would not be a strong tailwind to the Company's IFS strategy; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>**JURISDICTION AND VENUE**</u>

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

<u>**PARTIES**</u>

14.     Plaintiff Patricia Quille, as set forth in the accompanying certification, incorporated by reference herein, purchased Intel securities during the Class Period, and suffered damages as a

result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant Intel is incorporated under the laws of Delaware with its principal executive offices located in Santa Clara, California. Intel's common stock trades on the NASDAQ exchange under the symbol "INTC."

16. Defendant Gelsinger was the Company's Chief Executive Officer ("CEO") at all relevant times.

17. Defendant David Zinsner ("Zinsner") was the Company's Chief Financial Officer ("CFO") at all relevant times.

18. Defendants Gelsinger and Zinsner (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Intel designs, develops, manufactures, markets, and sells computing and related products and services worldwide. The Company's product portfolio is comprised of central processing units, chipsets, processors, graphics processing units (GPUs), and other semiconductor products. It also offers silicon devices and software products; and optimization solutions for workloads, such as AI, cryptography, security, storage, and networking.

20.    On March 23, 2021, Defendant Gelsinger laid out his vision for the future of the Company under a program he dubbed "IDM 2.0." To deliver on this vision, the Company announced it would reconfigure and would now be operating through the following reportable segments: Client Computing Group, Data Center and AI, Network and Edge, Mobileye, and IFS. IFS was created to encompass the Company's packaging and process technology. Beginning in the first quarter of Fiscal Year 2022, The Company utilized these segments to report revenue. Then, on October 11, 2022, Defendant Pat Gelsinger announced the Company would shift to an the "Internal Foundry" (or "Foundry" model). Under the Internal Foundry model, Intel would recognize revenues generated from both external foundry customers and Intel Products, as well as technology development and product manufacturing costs historically allocated to Intel Products. On June 21, 2023, the Company provided an update on the Foundry model, explaining that, beginning in the first quarter of 2024, the Company would separate out all manufacturing services into a separate group, inclusive of IFS, manufacturing, and technology development, to form the Foundry, and implement a new financial reporting structure to recognize this reorganization, under which Foundry would be responsible for its own reportable P&Ls. The Company emphasized the cost saving and margin improving benefits the Internal Foundry model would provide and the tailwind it would bring to IFS.

**Materially False and Misleading**

**<u>Statements Issued During the Class Period</u>**

21.    The Class Period begins on January 25, 2024.[2] On that day, Intel announced fourth quarter and full year 2023 financial results in a press release (the "FY2023 Press Release"). The FY2023 Press Release reported the success of the Company's business unit revenue, including Intel Foundry Services, which was reported as follows:

| Business Unit Revenue and Trends | Q4 2023 | vs. Q4 2022 | 2023 | vs. 2022 |
|---|---|---|---|---|
| Client Computing Group (CCG) | $8.8 billion | up33% | $29.3 billion | down  8% |
| Data Center and AI (DCAI) | $4.0 billion | down10% | $15.5 billion | down 20% |
| Network and Edge (NEX) | $1.5 billion | down24% | $5.8 billion | down 31% |
| Mobileye | $637 million | up13% | $2.1 billion | up  11% |
| Intel Foundry Services (IFS) | $291 million | up63% | $952 million | up103% |

[2] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

22.     The FY2023 Press Release included the following comment of Defendant Zinsner, Intel's CFO:

> We continued to drive operational efficiencies in the fourth quarter, and comfortably achieved our commitment to deliver $3 billion in cost savings in 2023. **We expect to unlock further efficiencies in 2024 and beyond as we implement our new internal foundry model, which is designed to drive greater transparency and accountability and higher returns on our owners' capital.**"

23.     On January 25, 2024, the Company hosted a conference call concerning the full year 2023 financial results during which Defendant Gelsinger stated, in relevant part:

> **we expect sequential and year-on-year growth in both revenue and EPS for each quarter of fiscal year '24.**
>
> *       *       *
>
> **Third-party engagements with IFS continue to validate our progress on process technology. We launched IFS with a long-term view of delivering the world's first system foundry that brings together a secure and sustainable supply chain with the best of Intel and our ecosystem.**
>
> While our ambitions will not materialize overnight, **we made tremendous progress in both Q4 and fiscal year '23 towards our goal of becoming the second largest external foundry by 2030.** The rapid adoption of AI by all industries is proving to be a significant tailwind for IFS as high-performance compute, an area where we have considerable wafer and packaging know-how and IP is now one of the largest, fastest-growing segments of the semiconductor market.
>
> *       *       *
>
> **Our success with IFS will be measured by customer commitments and revenue.** We have taped out more than 75 ecosystem and customer test chips. IFS already has more than 50 test chips in the pipeline across 2024 and 2025, 75% of which are on Intel 18A.
>
> *       *       *
>
> The momentum in advanced packaging is very strong and is another facet of our foundry strategy, which is clearly benefiting from the surge of interest in AI. With leadership technology and available capacity, our opportunity set continues to grow. In total, across wafer and advanced packaging, **our lifetime deal value for IFS is now over $10 billion, more than doubling from the $4 billion we provided in our last update.**
>
> *       *       *
>
> As our new internal foundry model, which is designed to drive greater transparency, accountability and focus on cost begins to take root, **we expect to unlock further cost savings and efficiencies in 2024 and beyond. We have officially transitioned to this new operating model on January 1, and we'll report the new segmentation format as part of our Q1 earnings. We see incremental efficiencies as we drive to our long-term model of 60% gross and 40% operating margins.**

24.     As part of the conference call on January 25, 2024, the Company provided an investor presentation which touted the Company's Foundry model, including stating operational efficiencies included ">$3B in FY'23, Internal Foundry Model," as shown excerpted:



25.     On January 26, 2024, Intel filed its annual report on Form 10-K for the period ended December 31, 2023, wherein the Company touted the benefits of the Foundry model accompanied by a report of IFS segment's financial performance, as follows excerpted in relevant part:

We believe the Open System Foundry model delivers differentiated capabilities to help our customers lead in their industries while bringing stability to the global semiconductor supply chain. **The momentum and customer commitments we are seeing demonstrate that our strategy and offerings are resonating, and we look to build on this success in 2024 and in future periods**.

*          *          *



26.     On March 6, 2024 Intel joint the Morgan Stanley Technology, Media & Telecom Conference, wherein Defendant Zinsner spoke, discussing the Foundry model, stating in relevant part that "***it's a significant tailwind to the earnings of the company***." Defendant Zinsner continued, stating:

> ***We can be profitable, meaningfully profitable in the foundry space, be well underneath what the leading player in the space is, and still drive significant profitability for the overall Intel company because we get the margin stacking benefit in at least the part of the business that we sell into our own fabless portion of our business.*** So that's really the way I kind of think about it.
>
> And I think the last piece of this is kind of restructuring how we manage the business. So we look at the entire manufacturing and TD footprint as a separate P&L and kind of manage the company accordingly to that. ***And I think we'll start to see a lot of the efficiencies that we think we can yield and get ourselves more competitive*** from a cost structure from managing the business in that way.

27.     On March 28, 2024, Intel published its Annual Report to Security Holders, which contained a prefatory letter from Defendant Gelsinger which stated in relevant part:

> ***While still early in our foundry journey, we are seeing significant traction.*** We began 2023 with a commitment from one Intel 18A foundry customer and ended the year with four. ***We also achieved five advanced packaging winds, a testament to the advantages of Intel Foundry. To support the growing demand for our foundry offering, we continued to expand our manufacturing capacity and capabilities***.

28.     The above statements identified in ¶¶ 21-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) the growth of Intel Foundry Services was not indicative of revenue growth reportable under the Internal Foundry segment; (2) the Foundry experienced significant operating losses in 2023; (3) that the Foundry experienced a decline in product profit driven by lower internal revenue; (4) as a result the Foundry model would not be a strong tailwind to the Company's IFS strategy; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

29.     On April 2, 2024, after the markets closed, Intel issued a press release which disclosed a retrospective revision of the Company's financial results under the new Foundry model reporting structure, revealing that the Foundry segment experienced an operating loss of $7 billion

on sales of $18.9 billion in 2023, that Foundry revenue in 2023 was $18.9 billion down $8.6 billion from 2022, that there was a lower product profit driven by lower internal revenue.

30.     Specifically, the Company provided a Retrospective revision to Item 7 of Intel Corporation's Annual Report on Form 10-K "Management's Discussion and Analysis of Financial Condition and Results of Operations" for the year ended December 30, 2023, as originally filed with the SEC on January 26, 2024, which stated in relevant part:

> We previously announced the implementation of our internal foundry operating model, which took effect in the first quarter of 2024, and creates a foundry relationship between our Intel Products business (collectively CCG, DCAI, and NEX) and our Intel Foundry business.
>
> *       *       *
>
> Our internal foundry model is a key component of our strategy and is designed to reshape our operational dynamics and drive greater transparency, accountability, and focus on costs and efficiency.



### Financial Performance

**Operating Segment Revenue Summary**

**2023 vs. 2022**

Revenue was $18.9 billion down $8.6 billion from 2022. Internal revenue was $18.0 billion, down $9.1 billion driven by lower intersegment volume. External revenue was $953 million, up $479 million from 2022, driven by higher packaging revenue.

**Segment Operating Loss Summary**

We had an operating loss of $7.0 billion, compared to an operating loss of $5.2 billion in 2022.

| (In Millions) | | |
|---|---:|---|
| $ | (6,955) | 2023 Operating Loss |
| | (2,100) | Lower product profit driven by lower internal revenue |
| | (411) | Higher period charges related to excess capacity |
| | (284) | Higher period charges driven by higher inventory reserves taken in 2023 |
| | 481 | Lower period charges primarily driven by a decrease in product ramp costs |
| | 315 | Higher product profit driven by external packaging revenue |
| | 213 | Lower operating expenses driven by various cost-cutting measures |
| $ | (5,169) | 2022 Operating Loss |

31.     On this news, Intel's stock price fell $3.61, or 8.2%, to close at $40.33 per share on April 3, 2024, on unusually heavy trading.

32.     On April 25, 2024, after the markets closed, Intel released its first quarter 2024 financial results, the first quarter reporting the Company's results under the Foundry model; the results revealed the Company's Foundry segment declined 10% compared to the same quarter last year, to a revenue of $4.4 billion.

33.     On this news, Intel's stock price fell $3.23, or 9.2%, to close at $31.88 per share on April 26, 2024, on unusually heavy trading.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Intel securities between January 25, 2024 and April 25, 2024, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Intel's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Intel shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Intel or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Intel; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40.     The market for Intel's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Intel's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Intel's securities relying upon the integrity of the market price of the Company's securities and market information relating to Intel, and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Intel's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Intel's business, operations, and prospects as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Intel's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased Intel's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Intel, their control over, and/or receipt and/or modification of Intel's allegedly materially misleading misstatements and/or their

associations with the Company which made them privy to confidential proprietary information concerning Intel, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Intel's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Intel's securities traded at artificially inflated prices during the Class Period.  On January 25, 2024, the Company's share price closed at a Class Period high of $49.55 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Intel's securities and market information relating to Intel, and have been damaged thereby.

47.     During the Class Period, the artificial inflation of Intel's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Intel's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Intel and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48.     At all relevant times, the market for Intel's securities was an efficient market for the following reasons, among others:

(a)     Intel shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Intel filed periodic public reports with the SEC and/or the NASDAQ;

(c)      Intel regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)      Intel was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

49.      As a result of the foregoing, the market for Intel's securities promptly digested current information regarding Intel from all publicly available sources and reflected such information in Intel's share price. Under these circumstances, all purchasers of Intel's securities during the Class Period suffered similar injury through their purchase of Intel's securities at artificially inflated prices and a presumption of reliance applies.

50.      A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

51.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward

looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Intel who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Intel's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

54.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Intel's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Intel's financial well-being and prospects, as specified herein.

56.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Intel's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Intel and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

57.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

58.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants'

material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Intel's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Intel's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Intel's securities during the Class Period at artificially high prices and were damaged thereby.

60.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Intel was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Intel securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

63.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.     Individual Defendants acted as controlling persons of Intel within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.     As set forth above, Intel and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of

1   the Class suffered damages in connection with their purchases of the Company's securities during

2   the Class Period.

### **PRAYER FOR RELIEF**

4        WHEREFORE, Plaintiff prays for relief and judgment, as follows:

5        (a)      Determining that this action is a proper class action under Rule 23 of the Federal

6   Rules of Civil Procedure;

7        (b)      Awarding compensatory damages in favor of Plaintiff and the other Class members

8   against all defendants, jointly and severally, for all damages sustained as a result of Defendants'

9   wrongdoing, in an amount to be proven at trial, including interest thereon;

10       (c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this

11  action, including counsel fees and expert fees; and

12       (d)      Such other and further relief as the Court may deem just and proper.

### **JURY TRIAL DEMANDED**

14       Plaintiff hereby demands a trial by jury.

16  DATED:  May 3, 2024                    **GLANCY PRONGAY & MURRAY LLP**

17                                         By:    _/s/ Charles H. Linehan_
18                                         Robert V. Prongay
                                           Charles H. Linehan
19                                         Pavithra Rajesh
                                           1925 Century Park East, Suite 2100
20                                         Los Angeles, California 90067
                                           Telephone: (310) 201-9150
21                                         Facsimile: (310) 201-9160
22                                         Email:  clinehan@glancylaw.com

23                                         **THE LAW OFFICES OF FRANK R. CRUZ**
                                           Frank R. Cruz
24                                         2121 Avenue of the Stars, Suite 800
                                           Century City, CA 90067
25                                         Telephone: (310) 914-5007

26
                                           *Counsel for Plaintiff Patricia Quille*
27

28

---

## SWORN CERTIFICATION OF PLAINTIFF

## INTEL CORPORATION SECURITIES LITIGATION

I, Patricia Quille, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Intel Corporation securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Intel Corporation securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.


5/3/2024                                    _Patricia Quille_
_____        _____
Date                                             Patricia Quille

**Patricia Quille's Transactions in Intel Corporation (INTC)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 3/8/2024 | Bought | 259.000 | $46.1198 |
| 3/8/2024 | Bought | 1.170 | $46.1198 |